REDACTED VERSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AKORN, INC.,

Counterclaim-Plaintiff,

v.

FERA PHARMACEUTICALS, LLC, ALFERA
PHARMACEUTICALS, LLC, FERANDA, LLC,
BACI 007, LLC, FERA HOLDINGS, LLC,
PERRIGO COMPANY OF TENNESSEE, and
PERRIGO COMPANY PLC,

Counterclaim-Defendants.

Case No. 12-cv-07694-LLS

---

## MEMORANDUM OF LAW IN SUPPORT OF PERRIGO COMPANY OF TENNESSEE AND PERRIGO COMPANY PLC'S MOTION TO DISMISS

Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorney for Perrigo Company plc and Perrigo Company of Tennessee*
*Christopher W. Healy*

REDACTED VERSION

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL ALLEGATIONS ................................................................. 4

STANDARD OF REVIEW ................................................................. 10

ARGUMENT ................................................................. 12

I.   The Complaint Fails to State a Cognizable Antitrust Claim Against The
     Perrigo Defendants ................................................................. 12

     A.   Akorn Lacks Antitrust Standing. ................................................................. 12

          1.   The Complaint Lacks Sufficient Facts To Support An
               Inference of Antitrust Injury. ................................................................. 14

          2.   Akorn Is Not an Efficient Enforcer of the Antitrust Laws ............ 17

     B.   ██████████████████████████████████████████
          █████████████████████████████████
          ████████████ ................................................................. 19

     C.   ██████████████████████████████████ ................ 22

II.  Akorn Fails to Allege a Sufficient Claim for Tortious Interference With A
     Business Relationship. ................................................................. 28

     A.   Akorn's Complaint Does Not Adequately Plead the Required
          Elements of a Tortious Interference Claim. ................................................................. 28

          1.   ████████████████████████████████
               ████████ ................................................................. 29

          2.   Perrigo Did Not Act Solely Out of Malice, or Use
               Dishonest, Unfair, or Improper Means. ................................................................. 29

          3.   Perrigo Did Not Cause Akorn to Suffer Injury. ............................. 31

III. Akorn's Complaint Against Perrigo Company plc Should Be Dismissed
     for Lack of Personal Jurisdiction. ................................................................. 31

     A.   Relevant Jurisdictional Facts ................................................................. 32

     B.   Perrigo Company plc Does Not Maintain Sufficient Contacts With
          New York to Merit General Jurisdiction. ................................................................. 32

     C.   Akorn's Allegations Do Not Support Specific Jurisdiction in New
          York. ................................................................. 34

REDACTED VERSION

D.      Due Process and Reasonableness Inquiries Should Prevent Perrigo
        Company plc From Being Subject to Personal Jurisdiction. .....................36

CONCLUSION.................................................................................................................38

REDACTED VERSION

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     Page(s)

*Arista Records LLC v. Lime Grp. LLC*,
    532 F. Supp. 2d 556 (S.D.N.Y. 2007)....................................................17, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................10

*Balaklaw v. Lovell*,
    14 F.3d 793 (2d Cir. 1994).....................................................................20

*Balance Point Divorce Funding, LLC v. Scrantom*,
    978 F. Supp. 2d 341 (S.D.N.Y. 2013).................................................28, 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................10

*Brown v. N.Y.C. Hous. Auth.*,
    2006 WL 1378599 (S.D.N.Y. May, 17, 2006) ....................................11, 27

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ........................................................................14, 15

*Capponi v. Murphy*,
    772 F. Supp. 2d 457 (S.D.N.Y 2009) .......................................................11

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (N.Y. 2004) .....................................................................30

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ......................................................................32, 33

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
    472 F.3d 23 (2d Cir. 2006)..........................................................23, 24, 25

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*,
    218 F. Supp. 2d 369 (S.D.N.Y.) *on reconsideration*, 219 F. Supp. 2d
    576 (S.D.N.Y. 2002) .............................................................................36

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).............................................................36, 37

*Gatt Commc'ns, Inc. v. PMC Associates, L.L.C.*,
    711 F.3d 68 (2d Cir. 2013)............................................................ *passim*

*Geneva Pharm. Tech. Corp. v. Barr Labs. Inc*,
    386 F.3d 485 (2d Cir. 2004)...............................................................25, 26

REDACTED VERSION

*Gladney Const., Inc. v. Edwards*,
  2007 WL 2973491 (D.S.C. Oct. 5, 2007) ................................................................10

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (N.Y. 1980) ................................................................30

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) ................................................................10

*J. McIntyre Machinery, Ltd. v. Nicastro*,
  131 S. Ct. 2780 (2011) ................................................................35

*Lessard v. Tyco Elec. Corp.*,
  2009 WL 3319784 (D.R.I. Oct. 13, 2009) ................................................................10

*Medtech Products Inc. v. Ranir, LLC*,
  596 F. Supp. 2d 778 (S.D.N.Y. 2008) ................................................................28, 30

*Novinger v. E. I. DuPont deNemours & Co., Inc.*,
  89 F.R.D. 588 (M.D. Pa. 1981) ................................................................11

*Ogbon v. Beneficial Credit Servs.*,
  2011 WL 347222 (S.D.N.Y. Feb. 1, 2011) ................................................................10

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
  555 U.S. 438 (2009) ................................................................24

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*,
  467 F.3d 283 (2d Cir. 2006) ................................................................17

*Poindexter v. EMI Record Grp. Inc.*,
  2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ................................................................11, 27

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
  507 F.3d 117 (2d Cir. 2007) ................................................................12, 14, 22

*Radiancy, Inc. v. Viatek Consumer Products Grp., Inc.*,
  2014 WL 4772340 (S.D.N.Y. Mar. 28, 2014) ................................................................19

*In re Richartz, Fliss, Clark & Pope, Inc.*,
  2010 WL 4502038 (Bankr. S.D.N.Y. Nov. 1, 2010) ................................................................12, 27

*Scutti Enterps. v. Park Place Entm't Corp.*,
  322 F.3d 211 (2d Cir. 2003) ................................................................30

*In re Terrorist Attacks on September 11, 2001*,
  538 F.3d 71 (2d Cir. 2008) ................................................................35

REDACTED VERSION

*Torres v. Carry*,
    672 F. Supp. 2d 338 (S.D.N.Y. 2009) .........................................................................11

*U.S. S.E.C. v. Sharef*,
    2013 WL 603135 (S.D.N.Y. 2013) ...........................................................................35

*Verizon Communications v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ..................................................................................................16

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S. Ct. 580 (1980) .......................................................................35

**Rules**

FED. R. CIV. P. 7 ...............................................................................................................11

FED. R. CIV. P. 10 .............................................................................................................11

FED. R. CIV. P. 12(B)(2) ............................................................................................12, 31

FED. R. CIV. P. 12(B)(6) ....................................................................................10, 11, 12

**Other Authorities**

Philip Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law* (4th
    ed. 2011) .....................................................................................................................18

REDACTED VERSION

Counterclaim-Defendants Perrigo Company plc and Perrigo Company of Tennessee ("Perrigo Tennessee") (collectively herein the "Perrigo Defendants") by their attorneys Reed Smith LLP, respectfully submit this memorandum of law in support of their Motion to Dismiss Akorn, Inc.'s ("Akorn" or "Plaintiff") Counterclaim Complaint (Doc. No. 45) (hereinafter, the "Complaint" or "Compl.").[1]

## PRELIMINARY STATEMENT

Akorn's attempt to draw the Perrigo Defendants into this litigation should be rejected and the Complaint should be dismissed.  Akorn has fundamentally failed to state a cognizable antitrust claim under either Section 1 or Section 2 of the Sherman Act.  The antitrust claims fail first because the allegations are insufficient to establish antitrust injury or that Akorn, a competitor of Perrigo and Fera, is an efficient enforcer of the antitrust laws.  Second, Plaintiff's antitrust theory of liability as to the Perrigo Defendants is facially implausible when viewed in light of basic antitrust principles and controlling United States Court of Appeals for the Second Circuit case law.  The Complaint's allegations of tortious interference should also be dismissed because they are conclusory and factually deficient.

Even if Plaintiff had stated a claim against these defendants, which it has not, this Court is not the proper venue for the claims against Perrigo Company plc, an Irish entity organized under Ireland law, because it lacks personal jurisdiction over Perrigo Company plc.

Most fundamentally, Akorn's antitrust claims must fail because the Complaint does not satisfy the threshold requirement that it allege antitrust injury resulting from the

---

[1]     Akorn has denominated its claim against the Perrigo Defendants as a "counterclaim".  It is more properly denominated a cross-claim, because the Perrigo Defendants were not previously party to this lawsuit.

1

REDACTED VERSION

███████████████████████████████████████████████

██████████████████████████████████████ Controlling

Second Circuit authority requires that a plaintiff's antitrust injury be tied to the alleged

harm to competition.  However, the Complaint does not even come close to making this

connection.  ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████  ████████████████

████████████████████████████  ██████████████████

███████████████████████████████████████████████

██████

The antitrust claims asserted against the Perrigo Defendants should also be

dismissed because they lack sufficient facts to state a plausible claim under Sections 1

and 2 of the Sherman Act.  Akorn concocts a theory built on allegations at odds with

basic antitrust principles, the documents attached to the Complaint, and many of the

Complaint's own allegations.

██████████████████████████████████████████████

███████████████████████████████████████████████

REDACTED VERSION

[REDACTED]

Akorn's complaint lacks the fundamental element of an agreement in restraint of trade in violation of Section 1 of the Sherman Act.

[REDACTED] the Complaint's factual allegations purporting to support that conclusion fall woefully short of the *Twombly/Iqbal* standard required to state a claim. It is well-established, and recognized in Second Circuit case law, that an upstream monopolist, [REDACTED] could not plausibly be "forced" to share its monopoly with parties downstream, [REDACTED]

REDACTED VERSION



The allegations simply do not hold up to the scrutiny this Court must apply at the motion to dismiss stage.

Finally, Akorn's tortious interference claim against the Perrigo Defendants is entirely conclusory and deficient under the Supreme Court's decisions in *Twombly* and *Iqbal*.

## FACTUAL ALLEGATIONS[2]

---

[2]   The facts alleged in the Counterclaim Complaint are taken as true solely for the purpose of this Motion to Dismiss.

4

REDACTED VERSION



REDACTED VERSION



REDACTED VERSION



REDACTED VERSION



REDACTED VERSION



REDACTED VERSION

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotations omitted). Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. A claim is plausible, rather than merely speculative, if it "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegality." *Id.* at 546; *see also Ogbon v. Beneficial Credit Servs.*, No. 10 CV 03760 (GBD), 2011 WL 347222, at *1, 3 (S.D.N.Y. Feb. 1, 2011) (applying the *Iqbal/Twombly* "plausibility" standard to dismiss a claim under Rule 12(b)(6)). This analysis is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, this Court can consider a number of items. ████████████████████████████████ ████████████████████████████████████████████████ ██████████ *See Lessard v. Tyco Elec. Corp.*, No. 09-112 S., 2009 WL 3319784, at *4 (D.R.I. Oct. 13, 2009) (considering the complaint and third-party complaint when ruling upon a Rule 12(b)(6) motion to dismiss); *Gladney Const., Inc. v. Edwards*, No. 3:05-1746-MBS-BM, 2007 WL 2973491, at *3 (D.S.C. Oct. 5, 2007) (considering the

REDACTED VERSION

complaint and third-party complaint when ruling on a Rule 12(b)(6) motion to dismiss); *Novinger v. E. I. DuPont deNemours & Co., Inc.*, 89 F.R.D. 588, 594 (M.D. Pa. 1981) (reading third-party complaint together with plaintiff's amended complaint when ruling on a Rule 12(b)(6) motion to dismiss); *see also* FED. R. CIV. P. 7 (defining "pleadings" as, *inter alia*, the complaint and third-party complaint).

The pleadings that may be considered on a motion to dismiss also include all exhibits to the pleadings. *See* FED. R. CIV. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). This Court can also consider documents referenced in or integral to the claims contained in the pleadings. *See Torres v. Carry*, 672 F. Supp. 2d 338, 341 n.3 (S.D.N.Y. 2009) ("In deciding a motion to dismiss, the Court may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings."); *Capponi v. Murphy*, 772 F. Supp. 2d 457, 462 n.2 (S.D.N.Y 2009) (same).

Significant for purposes of the motion here, if materials considered part of the pleadings are inconsistent with the allegations in the pleadings, those materials trump the allegations in the pleadings. *See Poindexter v. EMI Record Grp. Inc.*, No. 11-cv-559(LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *Brown v. N.Y.C. Hous. Auth.*, No. 05-cv-10332(VM), 2006 WL 1378599, at *1 (S.D.N.Y. May, 17, 2006) ("[W]here allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the Court is not obliged to credit the allegations in the complaint."); *see also*

11

REDACTED VERSION

*In re Richartz, Fliss, Clark & Pope, Inc.*, Nos. 09-13919 (MG), 10-3317 (MG), 2010 WL 4502038, at *4-*5 (Bankr. S.D.N.Y. Nov. 1, 2010) (granting a Rule 12(b)(6) motion to dismiss because the court concluded in light of the documents attached to and referenced in the complaint, the complaint "fail[ed] to satisfy the plausibility standard established by *Iqbal*").

## ARGUMENT

The Counterclaim Complaint fails to state a claim against either of the Perrigo Defendants. Each of Akorn's claims against the Perrigo Defendants is legally deficient under Rule 12(b)(6). In addition, Akorn's claims against Perrigo Company plc should be dismissed for the independent reason that this Court lacks personal jurisdiction over that Irish entity under Rule 12(b)(2). Accordingly, the Complaint should be dismissed against the Perrigo Defendants in its entirety with prejudice.

**I.    The Complaint Fails to State a Cognizable Antitrust Claim Against The Perrigo Defendants.**

The Complaint's antitrust claims are deficient as a matter of law and should be dismissed because they fail to allege facts to support Akorn's antitrust standing ███

████████████████████████████████████████████████

████████████

**A.    Akorn Lacks Antitrust Standing.**

"Antitrust standing is distinct from constitutional standing, in which a mere showing of harm in fact will establish the necessary injury." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (internal citations omitted). Akorn fails to allege facts sufficient to meet the standing requirements of (1) antitrust injury and (2) to show that Akorn can be an efficient enforcer of the antitrust laws. *See Gatt*

REDACTED VERSION

*Commc'ns, Inc. v. PMC Associates, L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013) ("[O]ur Court has distilled the [antitrust standing] factors into two imperatives: we require a private antitrust plaintiff plausibly to allege (a) that it suffered a special kind of 'antitrust injury,' and (b) that it is a suitable plaintiff to pursue the alleged antitrust violations and thus is an 'efficient enforcer' of the antitrust laws.") (internal quotation omitted). ███████

13

REDACTED VERSION



n light of this factual context alleged in the Complaint, Counts I and II of the Complaint lack sufficient factual allegations to state a claim and are fundamentally implausible.

### 1.  The Complaint Lacks Sufficient Facts To Support An Inference of Antitrust Injury.

"[I]t is axiomatic that the antitrust laws do not protect a competitor against competition." *Port Dock*, 507 F.3d at 122.  Accordingly, Akorn must allege more than injury to itself, it must allege facts demonstrating injury to competition. *Id.* ("The necessary 'antitrust injury' is an injury attributable to the anticompetitive aspect of the practice under scrutiny.")

In *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), the Supreme Court stated that competitor plaintiffs attempting to establish antitrust injury:

> must prove more than injury causally linked to an illegal presence in the market.  Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  *The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.*

REDACTED VERSION

*Id.* at 489 (emphasis added).

Consistent with *Brunswick*, the Second Circuit thus requires a three step inquiry to determine whether antitrust injury has been sufficiently alleged by a private plaintiff like Akorn:

> First, the party asserting that it has been injured by an illegal anticompetitive practice must identify[ ] the practice complained of and the reasons such a practice is or might be anticompetitive. Next, we identify the actual injury the plaintiff alleges. . . . Finally, we compar[e] the anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges.

*Gatt*, 711 F.3d at 76 (internal quotations and citations omitted). Moreover, "[i]t is not enough for the actual injury to be 'causally linked' to the asserted violation. Rather, in order to establish antitrust injury, the plaintiff must demonstrate that its injury is of the type the antitrust laws were intended to prevent and that flows from that which makes [or might make] defendants' acts unlawful." *Id.* (internal quotations and citations omitted).



15

REDACTED VERSION



As the Supreme Court explained in *Verizon Communications v. Law Offices of Curtis V. Trinko, LLP*:

> The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system. The opportunity to charge monopoly prices – at least for a short period – is what attracts "business acumen" in the first place; it induces risk taking that produces innovation and economic growth. To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*.

*Id.*, 540 U.S. 398, 407 (2004) (emphasis original).

REDACTED VERSION

██████████████████████████████████████████████

████████████████████████████████

### 2.   Akorn Is Not an Efficient Enforcer of the Antitrust Laws.

In addition to lacking facts demonstrating antitrust injury, Akorn's antitrust claims should be dismissed for the independent reason that Akorn is plainly not an efficient enforcer of the antitrust laws. *See Gatt*, 711 F.3d at 78. "Even where a plaintiff adequately alleges an antitrust injury, it may still lack standing if it is not an 'efficient enforcer' of the antitrust laws." *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 568 (S.D.N.Y. 2007).

In order to determine whether a plaintiff qualifies as an "efficient enforcer", and thus has standing under the antitrust laws, courts must examine, "(1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries." *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290-91 (2d Cir. 2006) (internal quotation omitted).   A straightforward application of these factors shows that Akorn lacks standing because it is not an efficient enforcer of the antitrust laws.



REDACTED VERSION



REDACTED VERSION



For these reasons, Akorn

is not an efficient enforcer of the antitrust laws and Counts I and II should be dismissed.

**B.**

"In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *Radiancy, Inc. v. Viatek Consumer Products Grp., Inc.*, No. 13-CV-3767 NSR, 2014 WL 4772340, at *12 (S.D.N.Y. Mar. 28, 2014), as amended (Apr. 1, 2014). Akorn's allegations are deficient under this standard.



REDACTED VERSION



In *Balaklaw v. Lovell*, 14 F.3d 793 (2d Cir. 1994), Dr. Balaklaw, an anesthesiologist, brought a lawsuit under the Sherman and Clayton Acts for an alleged group boycott and unreasonable restraint of trade preventing him from rendering anesthesiology services at a certain hospital. The district court held that Dr. Balaklaw lacked standing to assert his antitrust claims, and the Second Circuit affirmed. *Id.* at 796.

The court further discussed the fact that, from both the consumers' and the providers of anesthesiology services' points of view, nothing about the relevant market had changed:

> The relevant markets even arguably affected by the exclusive contract granted to Dr. King and his group are (1) the consumers of anesthesiology services, and (2) the providers of anesthesiology services. From the consumers' point of view, nothing about the market has changed. . . . From the standpoint of the providers of anesthesiology services, the market remains similarly unaltered.

*Id.* at 798-99. Prior to the contract at issue, the hospital had been in an exclusive contract with Dr. Balaklaw's group. Thus, from the consumer's point of view, anesthesiology services at the hospital had always been offered on an exclusive basis; only the provider

20

REDACTED VERSION

changed.  Similarly, the market in which anesthesiologists competed for jobs remained the same, and the fact that Dr. Balaklaw was personally harmed did not prove that the antitrust laws were violated.



REDACTED VERSION



C.

"To survive a motion to dismiss, a pleading must contain enough factual matter (taken as true) to suggest an agreement to [engage in anticompetitive conduct] was made." *Arista Records*, 532 F. Supp. 2d at 576 (alteration in original) (internal quotation omitted). "[A] complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock*, 507 F.3d at 121.

22

REDACTED VERSION



'[A]n exclusive distributorship would be counterproductive so far as any monopolization goal of [a manufacturer] is concerned. A monopolist manufacturer of a product restricts output of the product in order to maximize its profits." *E & L Consulting,*, 472 F.3d at 29-30.  "The power to restrict output to maximize profit is complete in the manufacturing monopoly, and *there is no additional monopoly profit to be made by creating a monopoly in the retail distribution of the product.*"  *Id.*  (emphasis

REDACTED VERSION

added).   "On the contrary, a firm with a monopoly at the retail distribution level will further reduce output to maximize its profits, thereby reducing the sales and profit of the monopoly manufacturer." *Id.*



"Like any seller of a product, a monopolist would prefer multiple competing buyers unless an exclusive distributorship arrangement provides other benefits in the way of, for example, product promotion or distribution." *Id.* at 30.  Indeed, the Second Circuit has "explicitly noted that a vertically structured monopoly can take only one monopoly profit." *Id.* (internal quotation omitted).

*See Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 454 (2009).  ("An upstream monopolist with no duty to deal is free to charge whatever wholesale price it would like; antitrust law does not prohibit lawfully obtained monopolies from charging monopoly prices.").

REDACTED VERSION



In *Geneva*, a manufacturer of generic blood thinner medication sued a competing manufacturer and (unlike here) the company that supplied the primary chemical ingredient for the drug, contending that the exclusive dealing arrangement between the defendants delayed plaintiffs' entry into the market and gave the defendant manufacturer and supplier a monopoly during the period of the exclusive deal. *Geneva*, 386 F.3d 485, 489 and 494 (2d Cir. 2004).

There, the court permitted plaintiffs' antitrust claims to proceed to trial after analysis of a more fully developed factual record.

---

3 The Second Circuit in *E & L Consulting* distinguished *Geneva*, which was an exception to the presumption that exclusive dealing arrangements are legal. *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006). *See also* Linzer, 499 F. Supp. 2d 540, 554.

REDACTED VERSION



REDACTED VERSION



*See Poindexter v. EMI Record Grp. Inc.*, No. 11-cv-559(LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *Brown v. N.Y.C. Hous. Auth.*, No. 05-cv-10332(VM), 2006 WL 1378599, at *1 (S.D.N.Y. May, 17, 2006) ("[W]here allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the Court is not obliged to credit the allegations in the complaint."); *see also In re Richartz, Fliss, Clark & Pope, Inc.*, Nos. 09-13919 (MG), 10-3317 (MG), 2010 WL 4502038, at *4-*5 (Bankr. S.D.N.Y. Nov. 1, 2010) (granting a Rule 12(b)(6) motion to dismiss because the court concluded in light of the documents attached to and referenced in the complaint, the complaint "fail[ed] to satisfy the plausibility standard established by *Iqbal*").

REDACTED VERSION

## II. Akorn Fails to Allege a Sufficient Claim for Tortious Interference With A Business Relationship.



### A. Akorn's Complaint Does Not Adequately Plead the Required Elements of a Tortious Interference Claim.

Under New York law, a plaintiff asserting a claim of tortious interference with a business relationship must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship. *See, e.g., Balance Point Divorce Funding, LLC v. Scrantom,* 978 F. Supp. 2d 341, 351 (S.D.N.Y. 2013), *Medtech Products Inc. v. Ranir, LLC,* 596 F. Supp. 2d 778, 815 (S.D.N.Y. 2008).

REDACTED VERSION

1.  

In order to withstand a motion to dismiss, a complaint must allege both that the defendant interfered with a specific relationship, and that the defendant knew about the relationship at the time of the alleged interference. *Balance Point*, 978 F. Supp. 2d at 351-52 (citations omitted).

Akorn's Complaint is deficient on these points.



2.  **Perrigo Did Not Act Solely Out of Malice, or Use Dishonest, Unfair, or Improper Means.**

REDACTED VERSION

[REDACTED]

The New York Court of Appeals has explained that because "[g]reater protection is accorded an interest in an existing contract ... than to the less substantive, more speculative interest in a prospective relationship ... liability will be imposed only on proof of more culpable conduct on the part of the interferer" under a tortious interference with business relationship claim. *Medtech Products Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 815 (S.D.N.Y. 2008) (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (N.Y. 1980)). Thus, a plaintiff must allege more culpable conduct on the part of the defendant for such a claim than for a claim for tortious interference with contractual relations. *Id.* (citations omitted).

As a general rule, unless the "defendant engaged in conduct for the sole purpose of inflicting intentional harm on plaintiffs," the defendant's conduct must amount to a crime or an independent tort. *Id.* (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–91 (N.Y. 2004). "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Id.* Additionally, "mere suspicions are inadequate to support a claim of tortious interference with business relations claim." *Id.* (quoting *Scutti Enterps. v. Park Place Entm't Corp.*, 322 F.3d 211, 217 (2d Cir. 2003)).

[REDACTED]

REDACTED VERSION



### 3. Perrigo Did Not Cause Akorn to Suffer Injury.

Even if Akorn sufficiently pled that Perrigo engaged in improper conduct, Akorn

did not suffer any injury based on the alleged conduct.

## III. Akorn's Complaint Against Perrigo Company plc Should Be Dismissed for Lack of Personal Jurisdiction.

Akorn cannot satisfy its burden of establishing personal jurisdiction over Perrigo

Company plc, an entity located in Ireland and organized under Irish law, and the

allegations against Perrigo Company plc in Akorn's Complaint therefore should be

dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

31

REDACTED VERSION

Based on a lack of any substantive connection to New York, Perrigo Company plc should not be subject to personal jurisdiction in New York, be it specific or general jurisdiction. The United States Supreme Court draws a sharp contrast between the minimum contacts required for the exercise of specific jurisdiction and those required for the exercise of general jurisdiction. *See generally, Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. *Id.*

### A.   Relevant Jurisdictional Facts

Perrigo Company plc is an entity located in, has its principal place of business in, and is organized under the laws of, Ireland. Aff. ¶ 3. Since December 18, 2013, Perrigo Company plc has served as a holding company for all Perrigo entities worldwide. Perrigo Company plc does not engage in the sale or manufacturing of any products – including bacitracin – in the United States or elsewhere. Aff. ¶¶ 4-6. Perrigo Company plc has never been incorporated in any state within the United States, and is not qualified as a foreign corporation in any state in the United States. Aff. ¶¶ 7-8. Perrigo Company plc does not maintain any office, address, phone number, or fax number in New York, and does not own or lease any real estate in New York. Aff. ¶¶ 9-10. Additionally, Perrigo Company of Tennessee is not the agent of Perrigo Company plc. Aff. ¶ 14.

### B.   Perrigo Company plc Does Not Maintain Sufficient Contacts With New York to Merit General Jurisdiction.

32

REDACTED VERSION

As Perrigo Company plc is merely a holding company with no operational assets and maintains no ties with New York, this Court Perrigo Company plc is not subject to general jurisdiction in the state.

"General jurisdiction" exists when a claim does not arise out of or is unrelated to the defendant's contacts with the forum, but where the defendant has maintained sufficient general contact with the state such that due process is not offended by the exercise of jurisdiction. The Supreme Court recently explained that with respect to corporations, absent exceptional circumstances, contacts sufficient to support general jurisdiction only are likely to exist where a corporation is incorporated or has its principal place of business; in other words, where the corporation is "home." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62, (2014). In *Daimler*, the Supreme Court specifically rejected older authority finding that a corporation is subject to general jurisdiction in each forum where the corporation "engages in a substantial, continuous, and systematic course of business."

A corporation will be "at home" and thus subject to general jurisdiction in its state of incorporation and principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). While those places are the "paradigm all-purposes forums," they are not necessarily the exclusive places a corporation will be deemed "at home." *Id.* The Supreme Court instructs that the court appraises "a corporation's activities in their entirety, nationwide and worldwide," and that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762.

Perrigo Company plc of Ireland can hardly be considered "at home" in New York. Perrigo Company plc is a corporation organized under the laws of Ireland, with its

33

REDACTED VERSION

principal place of business at the Treasury Building, Lower Grand Canal Street, Dublin 2, Ireland.  Perrigo Company plc was not organized under the laws of New York and is not based in New York.  Perrigo Company plc does not maintain continuous ties nor conduct continuous business in New York.  In ███████████████████████████████████

████████████████████████████████████████████████████████████████████

██ Further, Perrigo Company plc had no affiliation whatsoever with Perrigo Company of Tennessee prior to December 18, 2013. Aff. ¶¶ 4, 15.

████████████████████████████████████████████████████████████████

████████████████████████ ██ ████████████████████████████████

████████████████ ███████████████████████████████████████████

███████████████ ██ ██ ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ ██ ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ ██ ██ ████████████████████████████████████████

███████████████████████████████████████████████████████████ ██

████████████████████████████████████████████████████████████████

████████████████████████ ██████████████████████████████████████

██████████████████████████

### C.   Akorn's Allegations Do Not Support Specific Jurisdiction in New York.

Beyond failing to allege facts tying Perrigo Company plc to New York under general jurisdiction, Akorn's Complaint similarly fails to allege sufficient facts tying the company to New York under specific jurisdiction.

REDACTED VERSION

Perrigo Company plc acknowledges that a defendant's contacts with a state may be less substantial to support the assertion of specific jurisdiction, where the cause of action arises out of those contacts. Yet where jurisdiction is predicated on a tortious act committed outside the jurisdiction, establishing that the act had foreseeable consequences within the jurisdiction is, standing alone, insufficient to meet the due process requirements for personal jurisdiction. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 580 (1980); *U.S. S.E.C. v. Sharef*, 2013 WL 603135 (S.D.N.Y. 2013). Rather, the defendant must have expressly aimed some intentional conduct at residents of the jurisdiction. *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008).

Courts have found personal jurisdiction over a foreign corporation where it has placed its goods in the "stream of commerce," but the Supreme Court has made clear that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).

Akorn again uses conclusory language in an attempt to tie Perrigo Company plc to New York, blanketly alleging "Perrigo regularly and systematically conducts business in this District, including through a manufacturing facility in Bronx County, New York." *See* Compl. ¶ 17. ███████████████████

██████████████████████████

██████████████████

REDACTED VERSION



### D. Due Process and Reasonableness Inquiries Should Prevent Perrigo Company plc From Being Subject to Personal Jurisdiction.

Additionally, subjecting Perrigo Company plc to personal jurisdiction in New York would be unreasonable and violate due process.

The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. A Court first must determine whether the defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction. Then, if minimum contacts are found, the Court undertakes the "reasonableness" inquiry and considers whether "the assertion of personal jurisdiction ... is reasonable under the circumstances of the particular case." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,* 218 F. Supp. 2d 369, 402-03 (S.D.N.Y.) *on reconsideration*, 219 F. Supp. 2d 576 (S.D.N.Y. 2002) and a*ff'd sub nom. First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).

Akorn has failed to establish sufficient minimum contacts tying Perrigo Company plc to New York, and Akorn's allegations do not create a reasonable basis for jurisdiction. There are five factors relevant to the reasonableness inquiry: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the

REDACTED VERSION

forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*

Simply put, as a mere holding company based in Ireland, Perrigo Company plc has not availed itself to New York via its day-to-day operations, nor do they have any meaningful presence in New York. To subject the entity to New York jurisdiction would violate notions of reasonableness and due process.

REDACTED VERSION

## CONCLUSION

For the reasons set forth above, the Perrigo Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated:  April 21, 2015

Respectfully submitted,

REED SMITH LLP

Christopher W. Healy (7221)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450
E-mail:  chealy@reedsmith.com

*Counsel for Perrigo Company plc and
Perrigo Company of Tennessee*

38